UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LA'SHANE DONYALE SCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>DR. AARON HAYNES, Chief Medical Official; KAYLA TINKER, Medical Trainer/Supervisor; KELLIE WASKO, Secretary of the Dept. of Corrections; SGT MOORE, Officer In Charge; OFFICER HALEY, Corrections Officer; OFFICER ELEHRS, Corrections Officer; OFFICER VAN BLAIR COM, Corrections Officer; OFFICER KEROESKA, Corrections Officer, a/k/a Kocourek; CHIEF WARDEN TERESA BITTINGER, Chief Warden; UNIT COORDINATOR ROBINSON, Unit Coordinator; CHEF TANYA, of Aramark; ARAMARK CO.; UNIT COORDINATOR PECHOUS; HEALTH SERVICE STAFF MEMBER ALEXIS; MELISSA MATURAN, ADA Coordinator/Corrections Specialist; ASSOCIATE WARDEN JOHNSTON, Associate Warden of the State of South Dakota Department of Corrections; SGT. ROWER, Correctional Officer of the State of South Dakota Department of Corrections; UNIT MANAGER EKEREN, Unit Manager of the South Dakota Department of Corrections; UNIT MANAGER ELLIS, Unit Manager of the South Dakota Department of Corrections; UNIT MANAGER HANSON, Unit Manager of the South Dakota Department of Corrections; JEANNIE BERTSCH, Prison Official of the South Dakota Department of Corrections; UNIT COORDINATOR MAYER, Unit Coordinator at the Department of Corrections; RYAN, Medical Supervisor/Leadership; CLINICIAN DIRECT RESPONSIBLE; JOHN DOE/JANE DOE, | 4:23-CV-04115-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S<br>MOTION FOR RECONSIDERATION |

| | |
|---|---|
| Health Service Staff Directly Responsible at the South Dakota Department of Corrections; NURSE SARAH, Health Service Nurse of the State of South Dakota Department of Corrections; JOHN DOE, Aramark Food Service Company Chief Supervisors; and LINDA, Of Aramark, <br><br> Defendants. | |

Plaintiff La'Shane Donyale Scott, an inmate at the Mike Durfee State Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Scott filed an amended complaint, Doc. 20, which this Court screened dismissing in part and directing service in part, Doc. 27. Scott moves for reconsideration on several claims dismissed during screening. Doc. 30.

I.      **Motion for Reconsideration**

The United States Court of Appeals for the Eighth Circuit has traditionally instructed courts to consider motions for reconsideration either under Rule 59(e) or Rule 60(b). See Sanders v. Clemco Indus., 862 F.2d 161, 168 (8th Cir. 1988).

A.      **Rule 59(e)**

Rule 59(e) does not specify the standards for alteration or amendment. See Fed. R. Civ. P. 59(e). In the Eighth Circuit, a court must find a "manifest error[]" of law or fact in its ruling to alter or amend its judgment under Rule 59(e). See Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (internal quotation omitted). But Rule 59(e) motions may not be used to introduce evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to the entry of judgment. Id. A party may also move to alter or amend judgment to present newly discovered evidence. Id.

1.   **Access to Chapel Activities**

In Scott's original and amended complaint and supplemental filings, he alleges that he was removed from the South Dakota State Penitentiary's (SDSP) Muslim Ramadan list because he had a supra pubic catheter and was unable to hold his bladder for over four hours. Doc. 1-1 at 40. He claims that SDSP's chapel rules prohibited inmates from reentering chapel services once they leave. Id. Scott was removed from the Muslim Ramadan list for twenty-seven days, but he was placed back on the Muslim Ramadan list and granted an accommodation to return to chapel activities after using the restroom. Id. at 36–39; Doc. 20 ¶ 57. During screening of Scott's amended complaint, this Court dismissed his First Amendment Free Exercise claim because he had not alleged sufficient facts showing that defendants substantially burdened his exercise of religion. Doc. 27 at 29.

In Scott's motion for reconsideration, he alleges that after being granted an accommodation, he "was only allowed to attend the last three days of the Islamic-Holy Month of Ramadan." Doc. 30 ¶ 2. He alleges that a letter from Defendant Melissa Maturan granted him an accommodation to return to activity after using the bathroom, but he was subject to a search upon returning to the activity. Id. Scott claims that "[o]ther same and similar situated inmates from other religious activities were not strip searched, or searched at all when they went to use the bathroom." Id. ¶ 3.

a.   **First Amendment Free Exercise Claim**

Scott moves for reconsideration on the dismissal of his First Amendment Free Exercise claim because he "sincerely practices and follows the teachings of the Islamic Faith." Id. ¶ 4. In order to state a First Amendment free exercise claim, Scott must allege facts showing that prison officials have substantially burdened the free exercise of his religion. Patel v. U.S. Bureau of

3

Prisons, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening the free exercise of religion means that the defendants' actions

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004) (cleaned up).

This Court dismissed Scott's claim on screening because he had not alleged that any particular defendant engaged in particular conduct that substantially burdened his free exercise of religion. See Doc. 27 at 29. Although Scott has alleged that he was not able to attend religious services, he does not allege that burdens to his religion were caused by the defendants. He claims that Maturan granted him an accommodation, but he does not allege that any of the named defendants were involved with his removal from the Ramadan list or prohibiting him from attending religious services. Thus, his motion for reconsideration of dismissal of his Free Exercise claim is denied.

### b.    Eighth Amendment Deliberate Indifference Claim

Scott's motion for reconsideration alleges claims arising under the Eighth Amendment for deliberate indifference for serious medical needs about his urology issues. Doc. 30 ¶ 3. Scott states that he has "well Known and Medical documented history have being fitted with a Supra Pubic Catheter, and then having it removed after wearing it for several years. I have a very weak bladder." Id. (internal quotations omitted).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This

is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Scott does not allege facts showing that Maturan was aware of and deliberately indifferent to his medical needs. See Doc. 1-1 at 36–42. Scott does not claim that Maturan was aware of his urology concerns prior to his request for an accommodation. Id. Scott alleges that

Maturan granted him an accommodation, permitting him to use the bathroom and return to religious activities. Doc. 30 ¶ 2. Although Scott alleges that unit staff and prison officials refused to allow him to return to religious activities if he went to the bathroom, he does not identify any particular defendant involved in the conduct or allege sufficient facts to show deliberate indifference to his serious medical needs. See Doc. 1-1 at 36–42. Thus, Scott's motion for reconsideration as to his Eighth Amendment claim related to his urology issues is denied.

### c.      Fourteenth Amendment Equal Protection Claim

In Scott's amended complaint, he alleges a violation of the Fourteenth Amendment because "[t]he Fourteenth Amendment means that the government can't discriminate, against you or treat you poorly because of your religion[.]" Doc. 20 ¶ 57. But his amended complaint did not allege any facts indicating that he was treated differently from same or similarly situated inmates because of his religion. See id. He also does not allege that any particular defendant engaged in discriminatory conduct related to his religion. See id.; Doc. 1-1 at 36–39.

In Scott's motion for reconsideration, he states that "[o]ther same and similar situated inmates from other religious activities were not strip searched, or searched at all when they went to use the bathroom." Doc. 30 ¶ 3. Scott did not allege such facts in his original or amended complaint or supplemental filings. Rule 59(e) motions may not be used to introduce evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to the entry of judgment. See Hagerman, 839 F.2d at 414 (internal quotation omitted); United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (citing Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998)).

Even if this Court construed Scott's motion for reconsideration as a motion to amend his complaint, Scott's request to amend his Fourteenth Amendment Equal Protection claim about

6

chapel activities would be denied as moot. The Equal Protection Clause of the Fourteenth Amendment requires the government to " 'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy, 372 F.3d at 984 (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, a plaintiff "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Id. (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). It is also an equal protection violation if "the different treatment is based upon either a suspect classification or a fundamental right." Patel, 515 F.3d at 815 (8th Cir. 2008) (internal quotations and citations omitted). "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)).

Scott generally alleges that he was treated differently from other same and similarly situated inmates, but he does not allege facts to support his conclusion that he was treated differently. Doc. 30 ¶ 3. He does not allege any facts showing who treated him differently and even if he was treated differently, that the alleged different treatment was motivated based on his religion. See id. A pro se complaint is liberally construed, but even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted). See also Erickson v. Pardus, 551 U.S. 89. 94 (2007) (per curiam). Thus, Scott's motion for reconsideration of dismissal of his Fourteenth Amendment Equal Protection claim related to chapel activities is denied.

### 2. First Amendment Retaliation Claims

In Scott's amended complaint, he stated that he "want[s] to become gainfully employed so that [he] can work [his] way out of prison and get (Earned Discharge Credits) or (EDC's)[.] However, out of retaliation Prison Officials will not give [Scott] a job which 'extends [his] prison term.' " Doc. 20 ¶ 64. During screening of Scott's complaint, this Court dismissed Scott's Fourteenth Amendment due process claims for violation of his liberty interests because he was not provided Earned Discharge Credits or prison employment. Doc. 27 at 48–49.

Scott argues that "Prison Officials' action or inaction with respect to program, job or classification matters also may deprive [a prisoner] of a liberty interest if it affects parole eligibility or good time credits." Doc. 30 ¶ 7. He also claims that "[t]he right to parole for the plaintiff and its conditions in the community are based upon treatments, and not just earned discharge credits or (EDC's)." Id. "Inmates have no protected liberty interest in immediate access to a treatment program, even programs providing significant benefits such as [the Sex Offender Treatment Program] of drug treatment." Cutwright v. Crawford, 2014 U.S. Dist. LEXIS 198984, at *4 (S.D. Iowa June 9, 2014) (citing Persechini v. Callaway, 651 F.3d 802, 807 (8th Cir. 2011)). "The general rule flowing from these cases is that '[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken "within the sentence imposed." ' " Persechini, 651 F.3d at 808 (alteration in original) (quoting Sandin v. Conner, 515 U.S. 472, 480 (1995)). Scott has not alleged that denial of access to treatment programs will result in him serving a longer sentence than imposed. Thus, he has not established a liberty interest in the right to treatment programs to reduce his sentence.

"It is also well settled that prisoners do not have a constitutionally protected liberty interest in having a prison job." Patterson v. Ryks, 2011 WL 1793158, at *4 (D. Minn. Mar. 28, 2011)

8

(collecting cases) R&R adopted by 2011 WL 1793186 (D. Minn. May 11, 2011). Many courts have held that "the loss of a mere *opportunity* to accumulate credit towards a sentence is not sufficient to create a protected liberty interest." Fiorito v. Fikes, 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022) (collecting cases). Thus, Scott has not established a liberty interest in prison employment, Earned Discharge Credits, or treatment programs, and his motion for reconsideration of dismissal of his due process claims related to prison employment, Earned Discharge Credits, or treatment programs is denied.

Scott claims that "[o]ut of retaliation for filing grievances, complaints and lawsuits, the plaintiff is not allowed or permitted by prison Officials and Unit Staff to work a job or attend mandated treatment programs." Doc. 30 ¶ 7 (citation omitted). This Court held that Scott's claims for retaliation for denial of employment, costing him opportunities to receive Earned Discharge Credits, survived screening. Doc. 27 at 30–32. Thus, Scott's motion for reconsideration for First Amendment retaliation claims is denied as moot.

### 3. First Amendment Access to the Courts

Scott claims that "Prison Officials intentionally removed a check 'upon Information and Belief,' from the plaintiff's privileged legal mail for the amount of $35.98– to stop, or stall his 'Small Claims Court,' law suit [sic] against listed defendant Teresa Bittinger." Doc. 30 ¶ 13. During § 1915A screening, this Court dismissed Scott's First Amendment access-to-the-courts claim because Scott's small claims action is not a challenge to his sentence or conditions of confinement. Doc. 27 at 35 n.17. "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)). See also Gard v. Dooley, 2015 U.S. Dist. LEXIS 171132, at

*34–35 (D.S.D. Dec. 23, 2015) ("The right of access to the courts extends only as far as protecting the inmate's ability to prepare initial pleadings in a civil action regarding his current confinement or in an application for a writ of habeas corpus." (quoting Blevins v. Dobbs, 2009 WL 3123021, at *3 (D. Colo. Sept. 23, 2009)); Wolff v. McDonnell, 418 U.S. 539, 579 (1974) (holding that the right to access to the courts applies in habeas and civil rights contexts). Thus, Scott's motion for reconsideration for dismissal of his First Amendment access to the court claim for his small claims action is denied.

### 4. Eighth Amendment Deliberate Indifference Claims

Scott received his medical records from Avera McKennan Hospital after this Court screened his complaint. Doc. 30 ¶ 10. Scott claims that the records show that transport was delayed on October 7, 2023, "due to correctional staff not being ready to go and unwilling to let (EMS) take pt. without a follow car despite being told by crew that it was an emergant [sic] situation." Id. (citing Doc. 30-1). Although Scott has obtained additional medical records, the newly discovered evidence does not show involvement by anyone against whom Scott's Eighth Amendment claims were dismissed. See generally id.; Doc. 27. Thus, because the newly discovered evidence does not allege any facts about any dismissed claims, Scott's motion for reconsideration about the dismissal of Eighth Amendment deliberate indifference claims is denied.

In his motion for reconsideration, Scott claims that "Prison Officials are more than aware and familiar with the Plaintiff[']s chronic care and seizure conditions, Necessary doctor prescribed medications and housing locations when ever he is placed in Segregated Housing unit, or SHU to provide him with faster and better access to (EMS) paramedics and observation." Doc. 30 ¶ 11. He also claims that "[t]he Hill SHU obstructs this ability and life saving treatments." Id. Scott generally alleges that prison officials are aware, but he does not identify any particular defendant

who was aware of and deliberately indifferent to his serious medical needs. Thus, Scott's motion for reconsideration about the dismissal of Eighth Amendment deliberate indifference claims is denied.

In his motion for reconsideration, Scott claims that "he is in severe pain and that his condition has become worse." Id. ¶ 8. He claims that he suffered more than de minimis injuries because of Officer Haley, Officer Moore, and Unit Coordinator Robinson's use of force. Id. Because of the injury, Scott needs back injections and has been prescribed a new medication, Gabapentin. Id. Scott has been scheduled for a time sensitive procedure at Mike Durfee State Prison, but "this time sensitive procedure and medication is being 'delayed' for some unknown reason, causing further damage and pain to the plaintiff." Id. ¶ 9 (citing Doc. 30-1). Scott's motion for reconsideration alleges new Eighth Amendment deliberate indifference claims for conduct that occurred at the Mike Durfee State Prison. Doc. 30 ¶¶ 8–9. If he wishes to allege new claims, he must do so by filing a motion to amend his complaint. Scott is warned that an amended complaint supersedes prior complaints, rendering the prior complaint without legal effect. In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citing Washer v. Bullitt Cnty., 110 U.S. 558, 562 (1884)). Thus, if Scott moves for leave to amend his complaint, all claims he seeks to bring in this lawsuit must be included in his proposed amended complaint.

### 5. Claims Against John Doe/Jane Doe

In Scott's motion for reconsideration, he alleges that he believes that the nurse who "made false statements against him on Approximately 6/13/2023[,]" was the same nurse, who acted in concert with Nurse Alexis "when they both approached him while he was taking a shower on A-Floor-Section-6 in Jameson Annex, to get the plaintiff to recant his story and coerce him to obsolve [sic] nurse Alexis of her racial slurs and inflammatory insinsitive [sic] comments." Doc. 30 ¶ 12

(internal quotations omitted). This Court held that Scott's Eighth Amendment deliberate indifference claims against John Doe in their individual and official capacities survived § 1915A screening. Thus, Scott's motion for reconsideration is denied as moot.

Scott claims that "[o]nly through the Court, or the Discovery Procedures can the plaintiff fully ascertain the name of this 'Jane Doe Nurse[.]'" Id. This Court informed Scott that he will have to identify John Doe. Doc. 27 at 43 n. 18. Perhaps Scott will have to do so through discovery from the defendants. But this Court does not have the responsibility to figure out whom Scott intends to reference or sue.

### 6. Claims Against Global Tel* Link (GTL)

Scott requests this Court reconsider its dismissal of his claims against Global Tel* Link (GTL). Doc. 30 ¶ 15. Scott claims that he "was unsure if the Court would allow him to name GTL-Global *Tel Link, as a listed defendant . . . so to be safe, rather than sorry the plaintiff did in fact name GTL, which is a private company that is contracted with the state[.]" Id. Although Scott requests this Court to reconsider its dismissal of his claims against GTL, Scott has not alleged that there was any error in fact or law of this Court's ruling dismissing his claims against GTL and has not submitted newly discovered evidence that was not available at the time he filed his original and amended complaints and supplements. Thus, Scott's motion for reconsideration of this Court's order dismissing his claims against GTL is denied.

### B. Rule 60(b)

Rule 60(b) authorizes a court to relieve a party from a final judgment or order under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the

judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Liberally construing Scott's motion, Scott alleges that dismissal of several of his claims on screening should be reconsidered because of newly discovered medical records that he could not obtain prior to this Court's screening of his complaint. See Doc. 30 ¶ 10. But Scott's records do not constitute allegations of conduct by any individual against whom his Eighth Amendment deliberate indifference to serious medical needs claims were dismissed against on screening. See Doc. 30-1. Thus, this Court construes Scott's filing of newly discovered medical records as a supplement to his amended complaint, and his motion for reconsideration is denied.

## II.  Conclusion

Accordingly, it is

ORDERED that Scott's motion for reconsideration, Doc. 30, is denied.

DATED May 8, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE