UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LA'SHANE DONYALE SCOTT, | 4:23-CV-04115-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| DR. AARON HAYNES, Chief Medical Official; KAYLA TINKER, Medical Trainer/Supervisor; KELLIE WASKO, Secretary of the Dept. of Corrections; SGT MOORE, Officer In Charge; OFFICER HALEY, Corrections Officer; OFFICER ELEHRS, Corrections Officer; OFFICER VAN BLAIR COM, Corrections Officer; OFFICER KEROESKA, Corrections Officer, a/k/a Kocourek; CHIEF WARDEN TERESA BITTINGER, Chief Warden; UNIT COORDINATOR ROBINSON, Unit Coordinator; UNIT COORDINATOR PECHOUS; HEALTH SERVICE STAFF MEMBER ALEXIS; MELISSA MATURAN, ADA Coordinator/Corrections Specialist; ASSOCIATE WARDEN JOHNSTON, Associate Warden of the State of South Dakota Department of Corrections; SGT. ROWER, Correctional Officer of the State of South Dakota Department of Corrections; UNIT MANAGER EKEREN, Unit Manager of the South Dakota Department of Corrections; UNIT MANAGER ELLIS, Unit Manager of the South Dakota Department of Corrections; UNIT MANAGER HANSON, Unit Manager of the South Dakota Department of Corrections; JEANNIE BERTSCH, Prison Official of the South Dakota Department of Corrections; UNIT COORDINATOR MAYER, Unit Coordinator at the Department of Corrections; RYAN, Medical Supervisor/Leadership; JOHN DOE/JANE DOE, Health Service Staff Directly Responsible at the South Dakota Department of Corrections; | |

| and JOHN DOE, Aramark Food Service Company Chief Supervisors,<br><br>                   Defendants. | |

Plaintiff La'Shane Donyale Scott, an inmate at the South Dakota State Penitentiary (SDSP), filed this pro se civil rights action under 42 U.S.C. § 1983 on July 26, 2023. Doc. 1. Scott filed an amended complaint, Doc. 20, which this Court screened in accordance with 28 U.S.C. § 1915A. Doc. 27. In the 1915A Screening Opinion and Order, this Court dismissed in part Scott's amended complaint and directed service on the defendants who remained after screening. Id.

Approximately five and one-half months before he filed this action, Scott filed another pro se civil rights under 42 U.S.C. § 1983. Scott v. Carpenter, 4:23-CV-04020-RAL (D.S.D. Feb. 9, 2023) ("Scott I"). Defendants in this action ("Scott II")[1] now move for judgment on the pleadings because they contend that all the claims in Scott II could have been brought in Scott I. Doc. 92. Scott opposes defendants' motion for judgment on the pleadings and contends that his "two cases asserting unique claims against different sets of Defendants arising from distinct sets of operative facts do not violate the claim-splitting doctrine." Doc. 97 at 2.

I.      **Summary of Scott's Pending Claims**

Because defendants contend that the claims in Scott's cases are duplicative, this Court begins its analysis with a summary of the claims that survived § 1915A screening in each of Scott's cases.

---

[1] In his opposition to defendants' motion for judgment on the pleadings, Scott refers to this action as "Haynes," and he refers to the earlier filed action (Scott I) as "Carpenter." See generally Doc. 97.

2

A.    Scott I (Carpenter)

In Scott I, six claims in Scott's complaint and amended complaint survived screening. See generally Scott I, Doc. 25.

- Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Carpenter, Sullivan, Nurse Lana, Swaggert, Gangler, Tinker, Charge Nurse Stephanie, Unknown Health Services Leadership, Unknown Officers and West Hall Unit Staff, and Wasko in their individual capacities for money damages. Scott I Doc. 25 at 37. This claim arises out of a seizure Scott experienced on October 29, 2022, when he was in the Segregated Housing Unit. Id. at 3–5, 12–17.

- Eighth Amendment deliberate indifference to conditions-of-confinement claim regarding the placement of an allegedly dangerous inmate, Larson, in Scott's cell against Sullivan, Vanderaa, Mills, and Wasko in their individual capacities for money damages. Id. at 17–20, 37.

- Eighth Amendment deliberate indifference to conditions-of-confinement claim regarding the placement of another allegedly dangerous inmate, Burton, in Scott's cell and a pepper spray residue incident against Wasko in her individual capacity for money damages. Id.

- Eighth Amendment deliberate indifference to conditions-of-confinement claim against all defendants except Dr. Carpenter in their official capacities for injunctive relief. Id. at 20, 38.

- First Amendment retaliation claim against Sullivan, Vanderaa, Mills, Swaggert, and Wasko in their individual capacities for money damages and against all defendants except Dr. Carpenter in their official capacities for injunctive relief. Id. This claim

3

arises out of Scott's termination from his kitchen job on February 16, 2023. Id. at 6–7, 28.

- Fourteenth Amendment equal protection claim against Swaggert and Wasko in their individual capacities for money damages. Id. at 38. This claim arises out of an alleged racial slur Swaggert made on February 16, 2023. Id. at 30–31.

## B.    Scott II (Haynes)

In Scott II, fourteen claims in Scott's complaint and amended complaint survived § 1915A screening. See generally Scott II Doc. 27.

- First Amendment retaliation claim against Bittinger, Ekeren, Tanya, Linda, Maturan, Pechous, and Alexis in their individual capacities and against Aramark. Id. at 30–32, 61.

- First Amendment retaliation claim against Dr. Haynes, Bittinger, Maturan, Johnston, Wasko, Rower, Ekeren, Ellis, Hanson, Bertsch, Mayer, Tinker, Ryan, Direct Clinician, John Doe, Moore, Haley, Elehrs, Van Blair Com, Kerouska, Robinson, Sarah, and Alexis in their official capacities for injunctive relief. Id. at 32, 61.

- First Amendment right to send and receive mail claim against Pechous and Mayer in their official capacities for injunctive relief and individual capacities. Id. at 33–34, 61.

- First Amendment access-to-the-courts claim against Mayer, Hanson, and Pechous in their official capacities for injunctive relief and individual capacities. Id. at 34–35, 61.

4

- Eighth Amendment excessive force claim against Haley and Moore in their official capacities for injunctive relief and individual capacities. Id. at 36–37, 61.

- Eighth Amendment failure to intervene claim against Robinson in his official capacity for injunctive relief and individual capacity. Id. at 37, 62.

- Eighth Amendment failure to protect claim against Bittinger and Maturan in their official capacities for injunctive relief and individual capacities. Id. at 38–39; 62.

- Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Haynes, Bittinger, Wasko, Rower, Tinker, Directly Responsible Clinician, John Doe, Moore, Haley, Elehrs, Kerouska, Robinson, Sarah, and Alexis in their individual capacities. Id. at 39–43, 62.

- Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Haynes, Bittinger, Maturan, Johnston, Wasko, Rower, Ekeren, Ellis, Hanson, Bertsch, Mayer, Tinker, Ryan, Direct Clinician, John Doe, Moore, Haley, Elehrs, Van Blair Com, Kerouska, Robinson, Sarah, and Alexis in their official capacities for injunctive relief. Id. at 39–44, 62.

- Eighth Amendment conditions-of-confinement claim against Maturan, Dr. Haynes, Bittinger, Wasko, Rower, Tinker, Directly Responsible Clinician, John Doe, Moore, Elehrs, Kerouska, Robinson, Sarah, and Alexis in their individual capacities. Id. at 44–47, 62.

- Eighth Amendment conditions-of-confinement claim against Dr. Haynes, Bittinger, Maturan, Johnston, Wasko, Rower, Ekeren, Ellis, Hanson, Bertsch, Mayer, Tinker, Ryan, Direct Clinician, John Doe, Moore, Haley, Elehrs, Van Blair Com, Kerouska,

5

Robinson, Sarah, and Alexis in their official capacities for injunctive relief. Id. at 44–47, 62–63.

- Fourteenth Amendment equal protection claim against Bittinger, Johnston, Wasko, Ellis, Hanson, Mayer, Van Blair Com, and Alexis in their individual capacities. Id. at 51–53, 63.

- Fourteenth Amendment equal protection claim against Dr. Haynes, Bittinger, Maturan, Johnston, Wasko, Rower, Ekeren, Ellis, Hanson, Bertsch, Mayer, Tinker, Ryan, Direct Clinician, John Doe, Moore, Haley, Elehrs, Van Blair Com, Kerouska, Robinson, Sarah, and Alexis in their official capacities for injunctive relief. Id. at 51–54, 63.

## II.   Legal Standard and Analysis

### A.   Motion for Judgment on the Pleadings

When considering a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), a district court applies the standard used to evaluate a motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Tombari v. NOV Process & Flow Techs. US, Inc., 168 F.4th 520, 521 (8th Cir. 2026) (per curiam).

### B.   Claim Splitting

The claim-splitting doctrine, which is also known as duplicative litigation, is a product of federal common law and stems from the instruction of the Supreme Court of the United States in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976) to avoid duplicative litigation between federal district courts. Retsel Corp. v. NDN Collective, No. 5:24-CV-05070-LLP, 2025 WL 1808904, at *5 (D.S.D. July 1, 2025). The United States Court of Appeals for the Eighth Circuit has instructed that "claim-splitting is discouraged. All claims must

be brought together, and cannot be parsed out to be heard by different courts." Sparkman Learning Ctr. v. Ark. Dep't of Hum. Servs., 775 F.3d 993, 1000 (8th Cir. 2014). "[T]he rule against claim-splitting prevents a party from pursing two distinct lawsuits that assert claims arising out of the same set of operative facts." Woodards v. Chipotle Mexican Grill, Inc., No. 14-CV-4181, 2015 WL 3447438, at *11 (D. Minn. May 28, 2015); see also Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc., 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.").

If a court determines that litigation is duplicative, the court must next determine whether to dismiss the duplicative litigation by analyzing several equitable factors. Brewer v. Swinson, 837 F.2d 802, 804 (8th Cir. 1988). The relevant equitable factors include: (1) the conservation of judicial resources; (2) the comprehensive disposition of litigation; (3) the relative progress of the two actions; (4) whether a suit is filed for vexatious, reactive, or tactical purpose; and (5) whether the forum in which the first suit was filed adequately protects the rights of the litigants in the second case. Ritchie Cap. Mgmt., LLC v. Jeffries, 849 F. Supp. 2d 881, 890–91 (D. Minn. 2012) (collecting cases) The relevant equitable factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983)).

## C.    Duplicative Litigation

The claims in Scott II do not overlap with the claims in Scott I. This Court considered this issue when Scott moved to consolidate his cases. When denying Scott's motion to consolidate, this Court explained that "[i]n each of his cases, Scott asserted multiple claims against numerous defendants, but the claims in each case are distinct. . . . While there may be a common question of law or fact, there are many more questions of law and fact that are not common." Scott I at Doc.

7

122 at 4–5. Nevertheless, to fully address defendants' motion for judgment on the pleadings, this Court will discuss why each of the claims in this case are not duplicative of the claims in Scott's other case.

Scott alleges a First Amendment retaliation claim in both of his cases. But the claims are against different defendants, arise during different time periods, and allege different retaliatory actions. Scott's retaliation claims in this action (Scott II) span from June 2023 through January 2024 and include denial of employment and loss of earned discharge credits. Scott II, Doc.1-1 at 16, 52, 56, 64, 90; Doc. 1-2 at 12; Doc. 15 at 2; Doc. 16 at 1–2; Doc. 19-1 at 2: Doc. 20 ¶¶ 29, 51, 58; Doc. 23 ¶ 4; Doc. 26 ¶ 8. Defendants contend that Scott raised "employment claims and loss of earned discharge credits in Scott I." Scott II Doc. 92 at 10. While defendants are correct that Scott's first case (Scott I) includes allegations that he was terminated from his kitchen job, defendants fail to point out that the termination at issue in Scott I occurred on February 16, 2023, after Scott alleges that he reported Swaggert had taunted and harassed him and used a racial slur. Scott I Doc. 15-1 at 6. In this case (Scott II), Scott's "employment claims" relate to terminations on June 12, 2023, and October 3, 2023. Scott II Doc. 16-1 at 1; Doc. 19 ¶ 21; Doc. 21-1 at 57.

In this case (Scott II), Scott has alleged a First Amendment right to send and receive mail claim against Pechous and Mayer. Scott II Doc. 6 at 6; Doc. 9 at 1–2; Doc. 13 ¶ 2; Doc. 15 at 12; Doc. 19 ¶ 22; Doc. 22 ¶¶ 2, 3; Doc. 23 ¶ 6; Doc. 24 ¶ 1; Doc. 27 at 33–34. In his other case (Scott I), Scott has not alleged any claims relating to the right to send and receive mail, and Pechous and Mayer are not named as defendants in his other case. See generally Scott I Doc. 25.

Scott has alleged an access-to-the-courts claim in this case (Scott II) against Mayer, Hanson, and Pechous. Scott II Doc. 1-1 at 56, 63; Doc. 6 at 6; Doc. 9 at 2; Doc. 15 at 2; Doc. 16 at 2; Doc. 18 ¶ 3; Doc. 19 ¶ 22; Doc. 19-1 at 2, 6, 48; Doc 20 ¶¶ 29, 35; Doc. 22 ¶ 12; Doc. 23

¶¶ 1–2, 5; Doc. 24-1 at 4, 8, 10; Doc. 27 at 34–35. Scott's other case (Scott I) does not include a claim alleging denial of the right to access the courts, and Mayer, Hanson, and Pechous are not named as defendants in the other case. See generally Scott I Doc. 25.

In this case, Scott alleges that Haley and Moore are liable for using excessive force, causing something to pop in his back. Scott II Doc. 6 at 4–5; Doc. 27 at 36–37. He also has alleged a claim against Robinson for failing to intervene in the incident. Scott II Doc. 15 at 12; Doc. 20 ¶ 47; Doc. 27 at 36–37. There are no excessive force claims or failure to intervene claims in Scott's other case, and Haley, Moore, and Robinson are not named as defendants in the first action. See generally Scott I Doc. 25.

Based on Scott's allegations that he alerted Maturan and Bittinger that he had received death threats, Scott's failure to protect claim against Maturan and Bittinger survived screening in this case. Scott II Doc. 27 at 38–39. In his other case, Scott alleged failure to protect claims, but those claims are against different defendants and arise out of different facts. Scott's failure to protect claims in Scott I arise out of his placement with inmates he believed were dangerous, and Scott asserts these claims against Sullivan, Vanderaa, Mills, and Wasko. Scott I Doc. 25 at 18–20. Maturan and Bittinger are not named as defendants in Scott I. See generally id.

In each of his cases, Scott asserts claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment. But the claims are against different defendants, arise during different time periods, and arise out of different facts. In Scott I, the deliberate indifference to serious medical needs claim arises out of a seizure Scott experienced on October 29, 2022, when he was housed in the Segregated Housing Unit. Scott I Doc. 150 at 7–12; Doc. 169 at 12–19. Scott brings this claim against Dr. Carpenter, Sullivan, Nurse Lana, Swaggert, Gangler, Tinker, Charge Nurse Stephanie, and Wasko. Id. Doc. 25 at 37.

9

In this case (Scott II), Scott alleges he was denied medications leading to seizures on June 12, 2023, and October 7, 2023. Scott II Doc. 20 ¶¶ 28–29, 38, 44, 46, 48–49. Additionally, Scott also alleges deliberate indifference to his medical needs related to a back injury he sustained because of the incident during which Haley and Scott allegedly used excessive force. Id. Doc. 27 at 42–43.

Scott brings claims alleging conditions of confinement violating his Eighth Amendment right to be free from cruel and unusual punishment in both cases. But the claims arise during different time periods, relate to different conditions of confinement, and are brought against different defendants. In Scott I, the conditions-of-confinement claim arises out of Scott's placement in cell containing pepper spray residue on April 4, 2023, and his placement with inmates he believed were dangerous in January 2023 and in March 2023. Scott I Doc. 22 ¶ 13; Doc. 151 ¶¶ 30, 51; Doc. 165-13 at 24; Doc. 170 ¶¶ 30, 51. Wasko is the only individual capacity defendant named in Scott's conditions-of-confinement claim relating to his placement in a cell containing pepper spray residence and his placement with an allegedly dangerous inmate in March 2023. Id. Doc. 25 at 19, 37. Sullivan, Vanderaa, Mills, and Wasko, in their individual capacities, are named as defendants in the claim arising out of Scott's placement with Larson in January 2023. Id. at 20, 37.

Scott's conditions-of-confinement claims in this case arise primarily out of placement in the Segregated Housing Unit in June and October of 2023. Scott II at Doc.1-1 at 56, 63–64; Doc. 6 at 6; Doc. 15 at 2; Doc. 16 at 2; Doc. 18 ¶ 3; Doc. 19 ¶ 22; Doc. 19-1 at 2, 6; Doc. 20 ¶ 29; Doc. 27 at 44–47. In this case, Scott names Maturan, Dr. Hayes, Bittinger, Wasko, Rower, Tinker, Moore, Elehrs, Kerouska, Robinson, Sarah, and Alexis as defendants in their individual capacities. Scott II Doc. 27 at 44–47, 62. Although Wasko is named as a defendant in Scott's conditions-of-

10

confinement claim in both cases, the overlap of one defendant does not make the claim duplicate because the claims arise from distinct factual allegations occurring in different time periods.

Finally, Scott alleges a Fourteenth Amendment equal protection claim in each of his cases. In Scott I, the equal protection claim arises out of an incident that occurred on February 16, 2023, when Swaggert allegedly taunted, harassed, and directed racial slurs to Scott. Scott I Doc. 25 at 6, 29–31. After Scott reported Swaggert's conduct, Scott contends that he was fired from his kitchen job. Id. Doc. 150 at 20–26; Doc. 169 at 28–31. Scott brings this claim against Swaggert and Wasko in their individual capacities for money damages. Id. Doc. 25 at 30–31, 38.

Scott's equal protection claims in this case are based on allegations that he has been treated differently than other inmates because other "[i]nmates have been fired and hired back, or given unit red shirt jobs the same day that they were terminated from the kitchen." Scott II Doc. 21-1 at 57. He also claims that he has been treated differently than similarly situated inmates and is "being unfairly singled out for mistreatment[.]" Id. Doc. 26 ¶ 11. He contends that he has been treated unfairly and racially discriminated against by officers, unit staff, and prison officials, but the specific allegations arise out of incidents occurring after February 16, 2023, and do not involve Swaggert. Id. Doc. 1-1 at 11, 33; Doc. 26 ¶ 6. Van Blair Com and Alexis, according to Scott, have racially taunted him. Id. Doc. 20 ¶¶ 31, 35, 45, 49. In this case (Scott II), Scott's equal protection claim is brought against Bittinger, Johnston, Wasko, Ellis, Hanson, Mayer, Van Blair Com and Alexis in their individual capacities. Id. Doc. 27 at 53. Wasko, the former Secretary of Corrections, is named in her individual capacity as a defendant in Scott's equal protection claim in both cases, but none of the other defendants overlap. As this Court has previously stated, the overlap of one defendant does not make the claims duplicative when each claim arises from different operative facts.

Defendants concede that the claims in <u>Scott I</u> and <u>Scott II</u> are not completely identical but argue that "neither the claims themselves nor the allegations in support of the claims need to be identical provided they are based on the same events or series of connected events and were available at the time of the pleading." <u>Scott II</u> Doc.104 at 2–3 (emphasis in original omitted) (quoting <u>Retsel Corp.</u>, 2025 WL 1808904, at *6). Here, Scott's claims and allegations are not based on the same events or series of connected events, and, as explained below, were not available at the time Scott commenced his first action. Additionally, while four defendants are named in both of Scott's actions, most defendants are named in only one of the two actions. Litigation involving non-identical parties may be duplicative if the "interests of the non-identical parties are aligned or related." <u>Ritchie Cap. Mgmt.</u>, 849 F. Supp. 2d at 889. Defendants do not argue that the interests of the non-identical parties are aligned or related. The Court concludes that in an action arising under 42 U.S.C. § 1983, where each defendant must be personally involved to be found liable in his or her individual capacity, the claims against each defendant, as matter of law, must be analyzed separately.

### D.    Scott's Amended Complaint in <u>Scott I</u>

Defendants do not dispute that every claim in this action (<u>Scott II</u>) arises from facts that occurred after he commenced his first action, <u>Scott I</u>, on February 9, 2023. But Defendants contend that the doctrine of claim splitting precludes Scott from raising any claims in this action arising out of events that occurred before he filed his amended complaint in <u>Scott I</u>. <u>Scott II</u> Doc. 104 at 2–6. Defendants also contend that the doctrine of claim splitting precludes Scott from raising in this action any claims that "arise from the same nucleus of operative facts as Scott I and were largely known or discoverable before the deadline to amend pleadings in *Scott I*." <u>Id.</u> Doc. 92 at 10.

12

The rule against duplicative litigation is not as broad as defendants contend. The United States Court of Appeals for the Eighth Circuit has instructed that "the rule against duplicative litigation . . . considers whether the parties to the actions are the same and whether the claims arise from the same nucleus of operative fact." Kezhaya v. City of Belle Plaine, 78 F.4th 1045, 1050 (8th Cir. 2023) (citations omitted). As this Court has explained, Scott names different defendants in his actions, although there are four defendants who are named in both cases. Scott II Doc. 97-1. More significantly, however, the claims in Scott's cases do not arise from the same nucleus of operative facts. In Scott I, Scott filed a motion to amend his complaint and a proposed amended complaint on March 14, 2023. Scott I Doc. 15; Doc. 15-1. As this Court explained in its screening order, a party is permitted to amend a pleading once as a matter of course 21 days after serving it. Id. Doc. 25 at 2. When Scott filed his motion for leave to file an amended complaint, defendants had not been served. Thus, Scott was granted leave to amend his complaint as a matter of course. Id. For the purpose of addressing defendants' argument that the claims in Scott II arose before Scott filed his amended complaint in Scott I, the Court will consider March 14, 2023, as the date when Scott filed his amended complaint.

The claims in Scott II that defendants contend should have been raised in Scott's amended complaint in Scott I arose after Scott filed his motion for leave to amend and his proposed amended complaint on March 14, 2023. See Scott II Doc. 104 at 5–6. In addition, because these claims arose after Scott had filed his initial complaint in Scott I, the claims could only be raised in Scott I if Scott obtained leave to file a supplemental complaint. Defendants' argument assumes that Scott could file a supplemental complaint as a matter of right. Scott did not have this right. Unlike an amended pleading, which adds matters overlooked or unknown to a party when filing, "[a] supplemental pleading [ ] is designed to cover matters subsequently occurring but pertaining to the

13

original cause." United States v. Vorachek, 563 F.2d 884, 886 (8th Cir. 1977) (per curiam) (citing cases). Federal Rule of Civil Procedure 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Supplemental pleadings require leave of court under Rule 15(d). 6A Wright & Miller's Federal Practice & Procedure § 1504 (3d ed.) "[B]oth a motion of a party, and leave of court are required as a prerequisite to the service and filing of supplemental pleadings." 3 Moore's Federal Practice § 15.30 (3d ed.).

In Scott I, Scott filed a motion seeking leave to file a supplemental complaint. Scott I Doc. 115. Defendants opposed Scott's motion. Scott I Doc. 118. According to defendants:

> Plaintiff's request will cause prejudice to Defendants as well as undue delay. Plaintiff's attempt to supplement his Complaint is not meant to achieve a just, speedy, and inexpensive resolution to this matter as intended by Rule 15(d). Plaintiff currently has two cases pending against the South Dakota Department of Corrections; this case and 4:23-CV-04115-RAL. Plaintiff has demonstrated that he is capable of filing a separate case if he believes he has additional cognizable claims. Allowing Plaintiff to continually amend the Complaints that he already has pending will frustrate, rather than promote, the just and speedy resolution of these matters.

Id. at 3. This Court denied Scott's motion for leave to file a supplemental complaint, finding that the case would be unduly delayed and defendants would be prejudiced if Scott were permitted to file a supplemental complaint. Scott I Doc. 122 at 9–11. Thus, defendants' contention that Scott could have sought leave to file a supplemental complaint in Scott I alleging claims that arose after he filed his initial complaint does not persuade this Court to conclude the doctrine of claim splitting bars Scott's claims in this action (Scott II). See Johnson v. Bd. of Cnty. Comm'rs, No. 99-2289, 1999 U.S. Dist. LEXIS 20801, at *10–12 (D. Kan. Dec. 9, 1999) (recognizing that res judicata

14

does not bar a second lawsuit to the extent that suit is based on facts occurring after the first suit was filed because the filing of a supplemental complaint is optional). Because this Court concludes that Scott I and Scott II are not duplicative, defendants' motion for judgment on the pleadings, Doc. 92, is denied, and it is not necessary for the Court to consider any equitable factors in this case.

## III.    Conclusion

For these reasons, it is

ORDERED that defendants' motion for judgment on the pleadings, Doc. 92, is denied. It is further

ORDERED that in accordance with Fed. R. Civ. P. 6(b)(1)(A), there is good cause to extend the dispositive motion deadline until **April 24, 2026**. Previously, this Court granted defendants' unopposed motion to amend the scheduling order to extend the deadline for dispositive motions until March 31, 2026. Doc. 112. All other provisions of the Court's previous scheduling order remain in effect.

DATED this 24th day of March, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

15